UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11783-GAO

BRUCE WILBORN,
Plaintiff,

v.

JOSHUA WALL, CESAR ARCHILLA, CHARLENE BONNER,
SHELIA DUPRE, INA HOWARD-HOGAN, LUCY SOTO-ABBE,
ROGER L. MICHEL, JR., MARK CONRAD, THOMAS F. MERIGAN,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 25, 2015

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendants' motion to dismiss (dkt. no. 43) be denied. The defendants, all members of the Massachusetts Parole Board (the "Board"), filed written objections to the Report & Recommendation (dkt. no. 59), and the plaintiff, Bruce Wilborn, has submitted a reply to those objections.

The defendants contend that Wilborn's 42 U.S.C. § 1983 challenge to his parole revocation and rehearing proceedings necessarily invalidates "the fact or duration of his confinement" and is therefore barred by the favorable termination rule. See Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)). I agree with the magistrate judge's analysis that the favorable termination rule is inapplicable because Wilborn seeks only a parole hearing that comports with the strictures of the Fourteenth Amendment, and not immediate release. The Supreme Court has directly held that § 1983 challenges to parole eligibility and suitability proceedings do not violate the favorable termination rule. Dotson, 544 U.S. at 82.

That Wilborn is challenging a parole revocation hearing and not an initial parole eligibility proceeding does not change the analysis. Wilborn's re-incarceration began with the Board's provisional revocation of his parole. If Wilborn is successful overturning the final parole revocation decision, his status will return to where it was before that decision, namely, incarcerated based on the provisional revocation, awaiting a final hearing and decision. Thus, his suit does not undermine his incarceration and "would not necessarily spell immediate or speedier release." See Dotson, 544 U.S. at 81 (emphasis in original); see also Phillips v. Conrad, Civil Action No. 10-40085-FDS, 2011 WL 309677, at *5 (D. Mass. Jan. 28, 2011) (ruling against a motion to dismiss a § 1983 challenge to a parole revocation hearing and distinguishing the pre-Dotson White v. Glittens, 121 F.3d 803 (1st Cir. 1997)).

The defendants' second objection is essentially a restatement of its first: Wilborn's Due Process claim should fail because of the favorable termination rule. For the same reasons already stated, I agree with the magistrate judge's analysis on this issue.

Having reviewed the relevant pleadings and submissions, I approve and ADOPT the magistrate judge's recommendation in its entirety. Accordingly, the defendants' Motion to Dismiss Amended Complaint (dkt. no. 43) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRUCE WILBORN,
    Plaintiff,

v.                                          CIVIL ACTION NO. 13-11783-GAO

JOSHUA WALL, *et al.*,
    Defendants.

## REPORT AND RECOMMENDATION
## ON MOTION TO DISMISS (#43).

KELLEY, U.S.M.J.

Plaintiff Bruce Wilborn brought an action under § 1983 of the Civil Rights Act of 1866 against the members of the Massachusetts Parole Board ("the Board"), alleging violations of his Fourteenth Amendment due process and equal protection rights with regard to a parole revocation hearing and subsequent parole hearing he had before the parole board. On December 19, 2014, Defendants filed a motion to dismiss and memorandum in support of the motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (##43, 44.) Plaintiff responded in opposition to the motion, and after hearing on the motion, filed a supplemental memorandum, and Defendants replied. (Plaintiff's opposition, #45; supplemental memorandum, #55; reply, #58.) Having reviewed the arguments of the parties and the applicable law, I recommend that Defendants' motion to dismiss be denied.

I.    BACKGROUND

As stated in the First Amended Complaint, in 1985, Wilborn was sentenced to life in the Massachusetts prison system with the possibility of parole (commonly referred to as a "second-degree life sentence"). (First Amended Complaint, #40, at 2-3.) He had been convicted of second-degree murder for his part in stabbing a victim to death for financial gain. (*Id.* at 3 & exh. B.) After 25 years of confinement, Wilborn was released on parole on November 23, 2009, and went to Illinois to live with his parents. (*Id.* at 4.)

Allegedly, while Wilborn was on parole, it was discovered that he had participated in a plan to alter an inmate's computer so that the inmate could communicate from inside the prison. (*Id.* at exh. B.) According to Wilborn, on August 10, 2010, Wilborn's Illinois parole officer placed him under arrest, and informed him "that a warrant had issued calling for his return to Massachusetts custody, where [he] would ... appear before the Board." (*Id.* at 4.) Defendants present a different version of events, stating that "[a] hearing examiner in Illinois conducted a probable cause hearing ... and determined that there was probable cause to find a violation of parole" and that, following the Illinois examiner's recommendation, the Parole Board "issued a warrant for permanent custody" in Massachusetts.[1] (#58 at 1.) On August 30, 2010, Wilborn received notice of the Parole Board's decision to provisionally revoke his parole. (#40 at 4.)

According to Wilborn, prior to the revocation hearing scheduled in Massachusetts, Wilborn and his counsel made several requests for evidence relating to the alleged parole violations, including asking for two reports describing the alleged violations. (*Id.*) Defendants did not respond to these requests. (*Id.*) Wilborn also requested that any individual "who gave information upon

---

[1] This discrepancy has no bearing on the determination of the motion to dismiss.

which revocation may be based" be present at the hearing. (*Id.* at 5.) The Parole Board denied that petition, stating that the request "lack[ed] merit." (*Id.*) Plaintiff's counsel next asked that the Parole Board issue a subpoena for recordings or transcripts of telephone calls that Wilborn allegedly had with an inmate while released on parole, arguing that they would contain evidence of mitigating circumstances and otherwise assist in his defense at the revocation hearing. (*Id.*) This request was also denied because it was said to "lack merit." (*Id.*)

The final revocation hearing took place on September 21, 2011.[2] (*Id.*; #44 at 3.) At that hearing, Plaintiff appeared before two of the board members, Ina Howard-Hogan and Roger Michel. (#40 at 5.) Neither Howard-Hogan nor Michel presented evidence or even a summary of evidence of Wilborn's alleged parole violations. (*Id.*) They also failed to advise him of his rights to reconsideration and appeal. (*Id.*) They determined that Wilborn had violated his parole. (#58 at 2.) The full Parole Board then reviewed the case. (*Id.*) Approximately five months later, on February 2, 2012, Wilborn received the Board's decision, which simply stated "Revocation affirmed, place on next available list [for parole reconsideration]." (#40 at 6 & exh. A.)

On April 10, 2012, Wilborn attended a revocation review hearing, which was held before all but two members of the Parole Board.[3] (*Id.*) Defendants state that "[t]he purpose of this review hearing ... was to determine whether Wilborn was suitable for parole." (#58 at 2.) During the hearing, Wilborn was questioned about the offense that led to his sentence. (#40 at 3 & exh. B.) Members of the board Michel and Cesar Archilla challenged Wilborn's credibility "by arbitrarily comparing the amount of detail [he] recalled to other parole-eligible inmates they identified by

---

[3] Mark Conrad and Thomas Merigan did not participate in the hearing. (#40 at 6.)

3

name." (*Id.* at 6.) Joshua Wall raised doubt about the reliability of a 2006 polygraph examination that had indicated that Wilborn was being truthful about his alleged lesser role in the stabbing death. (*Id.*) Michel also proposed an alternative version of the murder, "which was inconsistent with the facts set forth by the Commonwealth's attorney during the plea colloquy." (*Id.*) On October 3, 2012, Wilborn received the decision of the Parole Board, which denied him release on parole, and set the next parole review for five years in the future. (*Id.* at 6, 9 & exh. B.)

On October 23, 2012, Wilborn appealed the decision by handing an "Appeal and Reconsideration of Parole Denial" document to Michelle Weatherbee, an Institutional Parole Officer ("IPO"). (*Id.* at 9.) On May 15, 2013, Weatherbee and another IPO, Janice Clark, told Wilborn that his appeal had never been forwarded to the Parole Board because requests for appeal and requests for consideration cannot be filed jointly. (*Id.*) Then, on October 16, 2013, Weatherbee and Clark informed Wilborn that the Parole Board had deemed him to have waived his right to appeal. (*Id.*)

On July 22, 2013, Plaintiff filed this lawsuit against the Parole Board. In his First Amended Complaint, Wilborn alleges that he was deprived of a hearing that protected his due process rights under the Fourteenth Amendment, and that he was treated in a discriminatory manner in violation of his Fourteenth Amendment equal protection rights. (*Id.* at 9-11.) Wilborn requests that the Court "[e]njoin the defendants to immediately grant [him] a new parole hearing, free of differential treatment, and free of arbitrary or capricious decision-making." (*Id.* at 12.) On December 19, 2014, Defendants filed their motion to dismiss the First Amended Complaint for failure to state a claim. (#44 at 2.) On June 8, 2015, the parties appeared by counsel to argue their positions to the Court.

4

II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *See id.* at 679.

III.   DISCUSSION

Section 1983 of the Civil Rights Act of 1866 "'supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.'" *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011)); *accord Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013). Section 1983 "'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Davis v. Rennie*, 264 F.3d 86, 97 (1st Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)). In this case, the parties do not dispute that Defendants were acting under color of state law. Plaintiff claims that Defendants violated his rights to due process and equal protection under the Fourteenth Amendment. (#40 at 9-11.)

In their motion, Defendants argue that the action should be dismissed for the following reasons: (i) Plaintiff's "claims are not cognizable under § 1983 under the Favorable Termination Rule"; (ii) "quasi-judicial immunity bars his claims for injunctive relief"; and (iii) "the complaint fails to state a claim of a violation of constitutional rights under 42 U.S.C. § 1983." (#44 at 2.)

In addition, at  the hearing on the motion, Defendants argued for the first time that "Plaintiff's attempt to base his due process challenges on both his final revocation hearing and his revocation review hearing must fail because the two hearings were at distinctly different stages of the parole process and cannot be combined." (#58 at 2; transcript of hearing, #53, at 6-7.) Defendants point out that "the final revocation hearing determined that Plaintiff's parole would be revoked and he would return to prison to complete his life sentence and the revocation review hearing determined whether Plaintiff was eligible for parole." (#58 at 2.) They concede that

6

Plaintiff has a limited liberty interest with respect to parole revocation, but argue that the claim is

barred by the Favorable Termination Rule. (*Id.*) Defendants contend, however, that the April, 2012

"revocation review hearing" was "really a determination of whether [Plaintiff] should be paroled";

Plaintiff has no liberty interest in being released on parole; and thus, he cannot state a claim under

§ 1983 with regard to this second hearing. (*Id.* at 2-3.)

In response, Wilborn argues that the distinction between the two hearings has no bearing on

the motion to dismiss because he is alleging violations of his constitutional rights to a fair hearing

that carried forward from the beginning of the parole revocation process through the denial of

reparole. (#55 at 2.) Plaintiff thus argues that the hearings should not be treated as separate

occurrences for which separate claims must be brought. At this stage in the litigation, Plaintiff is

correct. There is no question that Plaintiff's parole revocation hearing led to his denial of reparole

at the second hearing. Whether and to what extent the alleged constitutional violations that occurred

at the outset of the parole revocation process affected the reparole process can be sorted out as the

case progresses.[4]

---

[4]In addition, there may be a question of fact as to whether the two hearings should have
been bifurcated as they were. Defendants, in their reply to Plaintiff's supplemental opposition,
set out the procedures for parole violation hearings and parole hearings, citing to regulations that
govern the process. It is not clear that the regulations were in fact followed here. Defendants
cite to 120 CMR 303.17(1) for the proposition that Wilborn's parole revocation process had two
parts: an initial hearing by two Board members, at which the members "determined that one or
more violations of parole had occurred," and a final decision by the full Board "that parole
would be revoked." (#58 at 2.) Defendants explain that "[t]he revocation process concluded at
that point" and the next hearing, the "review hearing," was scheduled "to determine whether
Wilborn was suitable for parole." (*Id.*)

The regulations, however, contemplate that the final revocation hearing will include a
decision on whether the parolee should be reparoled, even if a violation is found and parole is
revoked. In other words, a determination that someone's parole should be revoked does not end
the revocation process:

120 CMR 303.17(1): The purpose of the final revocation hearing is to determine

A.    *The Favorable Termination Rule*

In *Heck v. Humphrey*, the United States Supreme Court set out what is known as the

Favorable Termination Rule:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would render
> a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994). Since *Heck*, the Supreme Court has clarified that "a state prisoner's

§ 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or

equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or

internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity

of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in

original).

---

whether the parolee violated one or more conditions of parole; if a violation occurred,
whether parole status should be finally revoked; and, if parole status is revoked, *whether
release to the community is appropriate*. [Emphasis added.]

120 CMR 303.25 [entitled "Revocation Decisions"]: (2) When the revocation
hearing panel finds, by a preponderance of the evidence, that the parolee violated a
condition of parole, the Board Members shall affirm the revocation of parole and may
take any of the following actions:
    (a) set a reparole date, in accordance with 120 CMR 401.05, which may be
    subject to the fulfillment of certain conditions, such as obtaining approved home,
    work or treatment; or
    (b) deny reparole.

Thus, the regulations suggest that the decision to revoke, and if, the Board decides to
revoke, whether the parolee should be released to the community, are both part of the final
revocation hearing.

8

In *Dotson*, the plaintiffs sought new parole hearings that would comport with constitutional and other legal principles. *See id.* at 76. The Supreme Court held that the plaintiffs' claims were cognizable under § 1983 because neither prisoner was seeking "an injunction ordering his immediate or speedier release into the community," and "a favorable judgment [would] not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s].'" *Id.* at 82 (quoting *Heck*, 512 U.S. at 487) (additional citations omitted); *see Phillips v. Conrad*, 2011 WL 309677, at *5 (D. Mass. 2011). Thus, actions under § 1983 are available when "'[s]uccess for [the plaintiff] does not mean immediate release from confinement or a shorter stay in prison,' but 'means at most new eligibility review, which at most will speed *consideration* of a new parole application.'" *Id.* (quoting *Dotson*, 544 U.S. at 82) (emphasis in original).

Earlier in this litigation, Judge O'Toole screened the complaint pursuant to 28 U.S.C. § 1915(e)(2), as the plaintiff was seeking to file the complaint without prepayment of the filing fee, and under 28 U.S.C. § 1915A, because the case involves a prisoner complaint in a civil action that seeks redress from a governmental entity. Both statutes authorize federal courts to dismiss complaints if the claims fail to state a claim on which relief may be granted, among other reasons. Judge O'Toole found that "to the extent that success on Wilborn's claims 'do[es] not mean immediate release from confinement or a shorter stay in prison,' but 'means at most new eligibility review, which at most will speed consideration' for parole, ... the plaintiff may pursue this action under § 1983." (Order, #5, at 2 [quoting *Dotson*, 544 U.S. at 82].) Thus, as Judge O'Toole has already recognized, *Heck* and the Favorable Termination Rule do not bar Wilborn's claims.

Here, Plaintiff seeks a new hearing, not release from prison on parole. He does not claim that the Parole Board violated his rights by revoking his parole or by denying him reparole, but by

9

depriving him of his constitutional rights "throughout the parole revocation process, including violations that occurred up to the Final Revocation Hearing, ... and after parole revocation." (#55 at 2; #40 at 4-11.) He requests only that he be given a hearing which complies with his constitutional rights. Under these circumstances, judgment in Plaintiff's favor would not "'necessarily imply the invalidity of [his] conviction[] or sentence[].'"[5] *Dotson*, 544 U.S. at 82 (quoting *Heck*, 512 U.S. at 487) (additional citations omitted). Defendants' motion should be denied on this issue.

B. *Quasi-Judicial Immunity*

Defendants contend that quasi-judicial immunity bars Plaintiff's claims for relief. (#44 at 8.) Defendants point to the Federal Courts Improvement Act ("FCIA"), which amended § 1983 to bar relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Defendants concede that whether parole board members are quasi-judicial officers and, if so, whether the FCIA applies to actions against them, is not settled in the First Circuit. (#44 at 9.)

It is unnecessary, however, to decide whether Defendants should be treated as quasi-judicial officers here because of the type of relief available to Plaintiff. Section 1983 expressly limits the liability of judicial officers to cases in which declaratory relief is unavailable. *See* 42 U.S.C. § 1983. Declaratory relief "applies only to prospective relief, to define legal rights in connection with future

---

[5] Defendants argue that the First Circuit's decision in *White v. Gittens*, 121 F.3d 803 (1st Cir. 1997), compels a finding that the Favorable Termination Rule bars Plaintiff's claim. (#58 at 2.) That case does not apply here, as it was pre-*Dotson*, and because, unlike here, it involved a request for a declaratory judgment that the challenged revocation was unconstitutional and void. *See White*, 121 F.3d at 805-06.

conduct." *Aldrich v. Young*, 2013 WL 3802436, at \*9 (D. Mass. 2013); *accord Aldrich v. Considine*, 2013 WL 4679722, at \*7 (D. Mass. 2013). "'[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued.'" *Aldrich*, 2013 WL 3802436, at \*9 (quoting *Abebe v. Seymour*, 2012 WL 1130667, at \*3 (D.S.C. 2012)). In other words, declaratory relief is only available in cases in which there is an "ongoing legal violation." *See Brown v. State of R.I.*, 511 Fed. Appx. 752, 754 (1st Cir. 2013); *Aldrich*, 2013 WL 3802436, at \*9; *Mills v. State of Me.*, 118 F.3d 37, 55 (1st Cir. 1997). Here, there is no ongoing legal violation, as the hearing and all that led up to it are in the past. Plaintiff seeks a new hearing, at which his constitutional rights will be protected. At most, his success would confirm that he was deprived of his rights in the past. Further, declaratory relief is not even available if a plaintiff seeks no more than a "declaration" that Defendants acted wrongfully in the past. *See Brown*, 511 Fed. Appx. at 6. In this case, then, because declaratory relief is not available to Wilborn, the § 1983 provision allowing for judicial immunity does not apply here, and this ground of Defendants' motion fails.

C.   *Constitutional Claims*

Defendants' final argument is that Plaintiff has failed to state a claim that his constitutional rights were violated. (#44 at 9-13.) Wilborn complains that Defendants violated his rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution.

1.   *Due Process*

Plaintiff alleges that Defendants' actions deprived him of due process in violation of the Fourteenth Amendment. (#40 at 9-10; #45 at 18-22.) To state a claim based on a denial of due process, a plaintiff must first allege that the defendants' actions violated his interest in life, property,

11

or liberty. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Id.*

The United States Supreme Court has made it clear that a parolee facing parole revocation has a conditional liberty interest. *See Vitek*, 445 U.S. at 488-89. In *Morrissey v. Brewer*, the Supreme Court explained:

> We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

408 U.S. 471, 482 (1972).

A state cannot revoke parole without "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. In this case, Plaintiff was released on parole, and that parole was revoked. Under *Morrissey* and its progeny, then, Plaintiff can bring an action for a hearing that meets due process requirements.

Defendants do not address whether Plaintiff has stated sufficient facts to support his due process claim, instead relying on their liberty argument. Nonetheless, Wilborn has satisfied this

12

burden for Rule 12(b)(6) purposes. The "minimum requirements of due process" set out in

*Morrissey* include the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee
> of evidence against him; (c) opportunity to be heard in person and to present
> witnesses and documentary evidence; (d) the right to confront and cross-examine
> adverse witnesses (unless the hearing officer specifically finds good cause for not
> allowing confrontation); (e) a "neutral and detached" hearing body such as a
> traditional parole board, members of which need not be judicial officers or
> lawyers; and (f) a written statement by the factfinders as to the evidence relied on
> and reasons for revoking parole.

*Id.* at 489. The Court in *Morrissey* also held that "the process should be flexible enough to

consider evidence including letters, affidavits, and other material that would not be admissible in

an adversary criminal trial." *Id.* "The parolee must have an opportunity to be heard and to

show, if he can, that he did not violate the conditions, or, if he did, that circumstances in

mitigation suggest that the violation does not warrant revocation." *Id.* at 488. In addition,

courts have emphasized that "'the use of false information in a parole violation can be a due

process violation' in and of itself.'" *Wilborn v. Walsh*, 584 F. Supp. 2d 384, 394 (D. Mass.

2008) (quoting *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001)); *see Monroe v. Thigpen*, 932

F.2d 1437, 1442 (11th Cir. 1991) (noting that a parole board's discretion "cannot be read as

granting the Board the discretion to rely upon false information in determining whether to grant

parole").

     Wilborn has alleged facts that, if true, violate many of the "minimum requirements of due

process" listed above from *Morrissey, supra*, 408 U.S. 489. He states that "[i]n advance of his

parole revocation hearing before the Board, Mr. Wilborn and his counsel made several requests

for evidence relating to the alleged parole violations, including two reports describing the

13

alleged violations," but Defendants failed to respond. (#40 at 4.)[6] Next, Plaintiff alleges that, "[o]n or about December 30, 2010, Mr. Wilborn requested at his parole revocation hearing the presence of any individual 'who gave information upon which revocation may be based,'" but says his request was denied, again for the stated reason that it "lack[ed] merit." (*Id.* at 5.)

Wilborn claims that, at the hearing itself, "Howard-Hogan and Michel did not present any evidence of Mr. Wilborn's parole violations" or "present a summary of the evidence concerning the alleged violations by Mr. Wilborn." (*Id.*) He alleges, as well, that "Howard-Hogan and Michel did not advise [him] of his administrative appeal and reconsideration rights." (*Id.*) Wilborn alleges that the Parole Board's written decision consisted of a single sentence: "Revocation affirmed, place on next available list." (*Id.* at 6 & exh. A.) He states that "[i]n the decision, the defendants did not indicate which of the alleged violations served as the basis for the revocation of Mr. Wilborn's parole. Nor did the Board's decision summarize the reasons for parole revocation." (*Id.* at 6.)

With respect to the revocation review and decision, Wilborn alleges, among other things, that the Board's decision "misrepresented facts relating to events that transpired at the Revocation Review Hearing." (*Id.* at 7.) For example, the decision states, "Wilborn admitted that prior to his release from custody he and [inmate] Richard Zagranski agreed to a plan to have Wilborn alter Zagranski's computer so they could communicate without anyone knowing," but Wilborn claims that he, in fact, "made no such admission at the hearing." (*Id.*) He further

---

[6]Wilborn also claims he requested that the Board issue a subpoena for recordings (or transcripts) of the telephone calls that Wilborn allegedly had with an inmate while released on parole, on the grounds that such discovery would provide evidence of mitigating circumstances and assist in Wilborn's defense at the revocation hearing, but that such request was denied because it "lack[ed] merit." (*Id.* at 5.)

alleges that "[t]he Board's decision misrepresented facts relating to [his] disciplinary history." (*Id.*) For example, the decision provides that Mr. Wilborn's record reflects a "disturbing pattern of deception" based in part on "willfully placing contraband in the cells of other inmates," while the disciplinary report for the alleged incident, which took place 23 years prior, "contradicts the Board's representation." (*Id.* at 7 & exh. B.)

Plaintiff has alleged facts which, taken as true, "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570; *Haley*, 657 F.3d at 46. As a result, he has sufficiently stated a claim against Defendants under § 1983 for violation of his Fourteenth Amendment due process rights in order to avoid dismissal.

### 2. *Equal Protection*

Plaintiff also alleges that "Defendants intentionally treated [him] worse than other similarly-situated inmates, singling [him] out for unfavorable treatment without justification in a discriminatory manner," in violation of his Fourteenth Amendment right to equal protection. (#40 at 11.) Defendants argue that, in order to state his claim, Plaintiff must allege, in part, that "the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." (#44 at 12 [quoting *Pagan v. Calderon*, 448 F.3d 16, 34 (1st Cir. 2006)].) The case they cite, however, involved a denial of benefits issue, and specifically stated that "[w]hile this formulation may not be appropriate in all equal protection cases, it is the proper standard in all cases in which a plaintiff premises an equal protection claim on a discretionary decision denying a state or local benefit." *Pagan*, 448 F.3d at 34 n.9. Defendants cite no authority to support the application of *Pagan* here.

15

There is ample case law holding that an equal protection claim may be made on a "class of one" basis, by a showing that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008); *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 639 (1st Cir. 2013); *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006). Such cases hold that, "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions." *Engquist*, 553 U.S. at 602 (internal quotation marks omitted). A plaintiff asserting an equal protection claim "must first 'identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled ... out for unlawful oppression.'" *Buchanan*, 469 F.3d at 178 (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)) (other quotation marks and citations omitted).

In his First Amended Complaint, Plaintiff alleges that "the Board's treatment of Mr. Wilborn was different and worse than others similarly situated in an arbitrary and unfair manner." (#40 at 8.) He states that:

> around the time of the Board's decision denying reparole to Mr. Wilborn, the Board reparoled other inmates who: (i) had more serious and more numerous parole violations than Mr. Wilborn; (ii) had a history of violating parole conditions; (iii) had worse disciplinary histories than Mr. Wilborn, including acts of violence; (iv) had completed fewer educational and rehabilitative programs than Mr. Wilborn; (v) had less familial support and employment prospects upon release than Mr. Wilborn; and (vi) had served, as punishment and as a means of accountability for their parole violations, a period of reincarceration shorter than

16

the length of Mr. Wilborn's confinement at the time of his revocation review
decision.

(*Id.*)

He also gives an example:

at or around the time the Board denied reparole to Mr. Wilborn, the Board granted
a third reparole to an inmate serving a life sentence after multiple parole
violations, including drug use, not residing in his approved home plan, and taking
his girlfriend's car with her purse inside. The Board, acknowledging flawed
judgment and poor decision making by the parolee, reasoned that 14 months was
"sufficient punishment for activity that did not involve a new criminal offense.

(*Id.*)

As another example, Plaintiff pleads:

at or around the time the Board denied reparole to M[r]. Wilborn, the Board
granted reparole to an inmate serving a life sentence, who violated his parole by
being arrested and convicted for drunk driving. The Board granted reparole
despite the fact that the inmate killed his original victim while under the influence
of alcohol.

(*Id.*)

In sum, Plaintiff has alleged sufficient facts to make a plausible claim for violation of his

equal protection rights. *See Twombly*, 550 U.S. at 570; *Olech*, 528 U.S. at 564; *Buchanan*, 469

F.3d at 178.

IV.    CONCLUSION

Neither the Favorable Termination Rule nor a theory of quasi-judicial immunity bars

Plaintiff from pursuing this lawsuit under § 1983. Further, Plaintiff has met the minimal

pleading requirements to survive dismissal of his due process and equal protection claims for

failure to state a claim under Rule 12(b)(6). Accordingly, I recommend that Defendants' motion

to dismiss be denied.

17

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st  Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

July 8, 2015

18